# SCHMIDT *v.* CLARK.

---

PATENTS; INTERFERENCE; BURDEN OF PROOF; EVIDENCE; CONCEPTION AND REDUCTION TO PRACTICE; WITNESSES.

1. Where it appears that the junior applicant in interference, who claims to have been the first to conceive and reduce to practice, did nothing

thereafter with his invention until the other party entered the field and manufactured several hundred devices embodying the invention of the issue, the burden of proof is on the junior party to prove his case beyond a reasonable doubt. (Following *Warner* v. *Smith,* 13 App. D. C. 111.)

2. The uncorroborated testimony of one of the parties to an interference, as to conception and disclosure, is insufficient. (Following *Sharer* v. *McHenry,* 19 App. D. C. 158, and *Petrie* v. *DeSchweinitz,* 19 App. D. C. 386.)

3. The failure of one of the parties to an interference, who claims prior conception and reduction to practice, to call as a witness a party to whom he claims to have disclosed the invention, or to give any reason for not so doing, is a circumstance tending to discredit his testimony.

4. In an interference involving an invention relating to pipe couplings for use in high-pressure mains, evidence on behalf of the junior party, upon whom rested the burden of proving beyond a reasonable doubt prior conception and reduction to practice, that, before the date of conception alleged by the senior party, couplings were made by the junior party which were said to embody the invention of the issue, is insufficient to show reduction to practice.

No. 541.   Patent Appeals.   Submitted November 19, 1908.   Decided December 22, 1908.

HEARING on an appeal from a decision of the Commissioner of Patents in the interference case.                    *Affirmed.*

The facts are stated in the opinion.

*Messrs. Connolly Bros.* for the appellant.

*Mr. Henry W. Carter* and *Mr. Charles D. Davis* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

This is an appeal by Charles R. Schmidt, the junior party to an interference proceeding, from the decision of the Commissioner of Patents awarding priority of invention to George

Clark, the senior party. The issue is stated in the following counts:

"1. In a pipe coupling, an entering member having an elastic tapered end portion in combination with a receiving member having a tapered socket, the taper of the socket being at a different angle from the taper of said end portion.

"2. In a pipe coupling, an entering member having an elastic end portion, and a receiving member having a tapered socket, the socket contacting with the end portion only at the extremity of the latter."

The invention relates to a pipe coupling for use in high-pressure mains, and its utility lies in the fact that packing, heretofore necessary, is dispensed with. As the counts of the issue indicate, this result is brought about by constructing the walls of the receiving member or socket slightly conical, and the entering member at the point of contact slightly larger than the smallest diameter of the socket or receiving member, so that when the parts are drawn together the end of the entering member is compressed within the socket. The walls of the entering member are so thinned as to be somewhat elastic and therefore capable of overcoming any slight irregularities of workmanship or alignment.

It is apparent that the invention, while a simple one, is one of great usefulness. It is also apparent that anyone making such an invention would be very likely to put it into immediate use.

It is stipulated that Clark conceived and disclosed the invention prior to December, 1904, and that, during that month, he made a pair of couplings embodying the invention, which were immediately put into successful use in one of the systems of piping in the plant of Armour & Company, at the Union Stock Yards, Chicago, Illinois; that this pair of couplings is still in actual and successful use; and that about 2,500 pairs of such couplings have since been manufactured and sold under Clark's direction and authority.

Clark filed an application for a patent on September 21, 1905.

Schmidt's application was not filed until December 14, 1906. According to his testimony, he conceived the invention in London, England, in July, 1901, when he claims to have made a sketch which he introduced in evidence. This sketch he brought with him to this country in November, 1901. He did not show the sketch to anyone, but during 1902 "described to Mark Dean, an employee of the Central Foundry Company, at Dundalk, Baltimore, Maryland, the difference in taper between the male and female parts; and about March, 1903, also sketched out for him on a blue print the male end of the pipe with the male member reduced on the interior to produce flexibility." Schmidt at that time, and at the time he gave his testimony, was vice-president of the Central Foundry Company. Dean was not produced as a witness; neither did Schmidt undertake to account for the failure to produce him. Schmidt further testified that pipe couplings embodying the sketch which he made in Dean's presence were constructed in May, 1903. He did not, however, state where these couplings were used; neither did he produce one. He produced a blue print which he claimed represented the coupling which he sketched for Dean. But this blue print was sent him from the main office of the Central Foundry Company, in New York, and he did not undertake to explain its origin. He did state, however, that couplings embodying the invention were successfully tested in the month of July, 1903.

In support of his testimony, Schmidt introduced two witnesses, both employees of the Central Foundry Company. James J. Fitzsimmons, one of said witnesses, was not able to identify the blue print upon which Schmidt traced the drawing for Dean; neither was he able to identify the blue print last referred to by Schmidt. He did testify, however, that in July, 1903, he made a number of couplings according to said blue print No. 2. His testimony failed to show that he understood the invention, or that the couplings made by him embodied it. The testimony of David Heller, the second witness, is absolutely valueless. He was shown blue print No. 2, and asked whether he could identify it, and stated that he could. He was next asked whether he knew of any pipe and fitting corresponding

to this blue print having been made and tested, and he replied "Yes, in January and February, 1903, at the Baltimore plant of the Central Foundry Company," and that the test was successful. He did not attempt to describe the invention, did not indicate that he had any real knowledge of it, and did not state the facts upon which he based his conclusion that the test he witnessed was successful.

The record being silent as to whether or not Schmidt did anything with his invention after July, 1903, until the filing of his application in December, 1906, it is a fair presumption that he did not. At that time Clark not only had entered the field, but had given the public the benefit of his discovery by manufacturing several hundred pairs of couplings. Schmidt, therefore, in order to prevail, must prove his case beyond a reasonable doubt. *Warner* v. *Smith,* 13 App. D. C. 111. We agree with the Commissioner that he has fallen far short of this standard of proof. In the first place, his testimony on the vital question as to whether he did in fact disclose the invention to Dean and make the pencil sketch in his presence in March, 1903, which pencil sketch constitutes the only real evidence that he then had a conception of this invention, is uncorroborated, and is therefore not sufficient to show conception. *Sharer* v. *McHenry,* 19 App. D. C. 158; *Petrie* v. *DeSchweinitz,* 19 D. C. 386. His failure either to call Dean or give any reason for not doing so is a circumstance tending to discredit his testimony. The evidence therefore merely shows that sometime in 1903 couplings were made by the Central Foundry Company, which were said to embody this invention. In view of the unsatisfactory and conflicting nature of that testimony, and of the further very significant and important fact that nothing was done toward putting the invention upon the market, we think the Commissioner entirely justified in his conclusion that the evidence is not sufficiently clear to show reduction to practice. It is inconceivable that, if this invention was reduced to practice and its utility demonstrated in 1903, Schmidt, who was in a position to have immediately put it into use, should not have done so.

A would-be inventor frequently has a nebulous and general

idea of a result which he wishes to accomplish, and possibly a general idea of means to accomplish that result, but, being unable to give his ideas practical form, allows them to slumber. Upon learning that another has successfully worked out such ideas, the mists of uncertainty are immediately dissipated, vagueness takes definite form and the would-be inventor becomes, in his own mind, the actual inventor, and acts accordingly. The danger and opportunity for fraud or mistake in such cases are so great that the proof should be very clear and very convincing to warrant an award to the dilatory party.

The decision of the Commissioner of Patents is affirmed, and the clerk of the court will certify this opinion and the proceedings in this court to the Commissioner of Patents, as required by law. *Affirmed.*